## Washburn *against* Belknap:

### IN ERROR.

Decided at Danbury, June 27.

The sentence of a justice of the peace for the commitment of an offender to the work-house *until released by order of law*, is erroneous, as being for an indefinite time.

It is the duty of the master of a work-house to furnish a prisoner therein with food; and the earnings of such prisoner are a fund in the hands of the master for his remuneration.

The reformation of the prisoner being the object of the law, the master cannot neglect the disciplinary course prescribed, and resort to an action founded on contract, against the prisoner, to recover the price of his board.

THIS was an action of book-debt, brought by *Washburn*, who was keeper of the gaol, and master of the work-house, of *Hartford* county, against *Belknap*, for the defendant's board, from *March* 7th, to *August* 26th, 1820.

The cause was tried, on the general issue, before the city court of the city of *Hartford*.

On the 9th of *March*, 1820, the defendant was committed to the gaol of *Hartford* county, as a work-house, or house of correction, by *Azor Hatch*, a constable of the town of *Hartford*, acting under the authority of the following warrant or *mittimus*: "To the keeper of the gaol in *Hartford*, within *Hartford* county; *Greeting*. Whereas *Harvey Belknap*, a transient person, hath this day been brought before me, the subscribing authority, on the complaint of *Azor Hatch*, one of the constables of said town, against the said *Harvey*, for being a common drunkard, a common nightwalker and pilferer, against the peace, and the statute law in such case provided; and it having been considered, by said authority, on the said delinquent's plea of *not guilty*, and on a full hearing of the complaint and testimony, that said *Harvey* is guilty; and it having been adjudged, by said authority, that said *Harvey* be sent to the work-house in said county; and said gaol being by law the work-house of said county; and said authority having ordered him, the said *Harvey*, to be kept to hard labour, under the rules and regulations of said house, until released, by order of law: These are, therefore, by authority of the state of *Connecticut*, to command you to receive the body of the said *Harvey Belknap*, and him safely

keep to hard labour, until he be released by order of law. Dated *Hartford, March* 7th, 1820. *Nathan Johnson*, Justice of the Peace." The defendant was confined in gaol until the 26th of *August*, 1820; when he was brought, by writ of *habeas corpus*, before the Hon. *John T. Peters*, a Judge of the superior court, at his chambers in *Hartford*; by whom he was discharged from his imprisonment, on the ground that the warrant or *mittimus*, under which he was committed, was insufficient to authorize his detention. During the period of the defendant's imprisonment, *viz.* from the 7th of *March* to the 26th of *August*, 1820, the plaintiff was the keeper of the gaol, under the sheriff of the county, and furnished the defendant with necessary provisions, as charged in the plaintiff's account; the prices charged being the customary prices. The plaintiff provided proper materials for the defendant to work upon, and ordered him to labour, as the law requires; and the defendant neglected and stubbornly refused to labour; but the plaintiff did not punish him, by putting fetters or shackles upon him, or by whipping him, or abridging him of his food. Upon these facts alone the plaintiff claimed, that the imprisonment of the defendant was authorized by law; and that the defendant was liable to pay to the plaintiff the sum charged for his board. The plaintiff also adduced evidence to prove, and claimed that he had proved, that the board furnished to the defendant, and charged in his account, was furnished at the defendant's request, while in prison. He, therefore, prayed the court to instruct the jury, that if they should find this fact, it would be their duty to return a verdict in his favour. But the court instructed the jury, that the imprisonment of the defendant was illegal; and that the defendant, being so illegally imprisoned, was not liable to pay the plaintiff for his board; which was decisive of the case. The jury returned a verdict for the defendant, accordingly. The plaintiff filed a bill of exceptions to the charge of the court; and thereupon brought a writ of error in the superior court. The questions of law arising on this writ of error, were reserved for the advice of all the Judges.

*T. S. Williams* and *Tousey*, for the plaintiff, contended, 1. That the judgment rendered, and the warrant issued, by the justice, were legal and correct. They were strictly conform-

*Hartford,*
*June,*
*1821.*

Washburn
*v.*
Belknap.

able to the statute, (*tit.* 176. *c.* 1.) on which the proceeding was founded. The statute expressly authorizes a justice of the peace, to commit to the work-house, persons of the characters specified, and to "order them to be kept to hard labour, *until released by order of law*." The judgment and warrant adopt the very words of the statute ; and they must receive the same construction in the one case, as in the other. If those words, when used by the legislature, mean an indefinite confinement, then the justice carried into effect the intention of the legislature, by subjecting the offender to an indefinite confinement : But if those words, when used by the legislature, do not import an indefinite confinement, then the justice has inflicted no such punishment. *Quacunque via data*, therefore, the judgment and warrant are valid, if the statute is valid. If the statute is not valid, it must be on the ground that it is injudicious and impolitic ; but on such a ground no court of justice would venture to declare an act of the legislature void.

But there is good ground to contend, that the imprisonment was *limited.* The general superintendence of the work-house is committed to the county court ; who are authorized, from time to time, to give such orders for its regulation and government, as they shall think proper. *Sect.* 3. The county court, then, had power to discharge the prisoner, whenever, in their opinion, the object of his commitment was effected ; so that the commitment in question had the same limitation as a commitment for neglect to comply with an order to find surety for the peace and good behaviour.

2. That the judgment and warrant, if not correct, were erroneous only. The justice had jurisdiction of the subject-matter ; the party was brought before him, by regular process ; and the proceedings were regular. *Terry* v. *Huntington* & al. *Hardr.* 480. *The Marshalsea case,* 10 *Co.* 76, 7. *McNeil* v. *Bright* & al. 4 *Mass. Rep.* 302, 3, 4. An action for false imprisonment would not lie against the justice, the constable or the gaoler. *Phelps* v. *Sill,* 1 *Day,* 315. *Parsons* v. *Lloyd,* 3 *Wils.* 345. 2 *Swift's Syst.* 96.

3. That if the judgment and warrant were not void, the defendant is liable on an *implied* contract to pay for his own support ; and cannot object, that he himself stubbornly refu-

sed to work, and the plaintiff did not shackle him, or whip him, or abridge him of his food.

4. That the fact claimed by the plaintiff, that he furnished the board *upon the defendant's request,* ought to have been submitted to the jury.   This, if found, would amount to an *express* contract ; and as the plaintiff was previously under no legal obligation to furnish board, there is no good reason why such contract should not be enforced.

*Scarborough,* for the defendant, contended,   1. That the judgment and warrant were *void ;* the imprisonment thereby directed being for an indefinite time.   No court has power to inflict such a punishment, either by virtue of any statute, or on principles of the common law.   The words " until relea-sed by order of law," at the conclusion of the 7th section, have no other effect than to authorize a confinement in the work-house, for the specified offences, until the time prescri-bed in the judgment and warrant shall have expired.   The offender may then be released, pursuant to law—or, what is an equivalent expression, " by order of law."   After an of-fender has been lawfully committed to the work-house, no court or magistrate has power to interfere, and order his re-lease.   There is nothing, in the statute relating to work-houses, that delegates such a power to the county court.

An imprisonment without limitation, is an imprisonment for life.   But the constitution of the state (*art.* 1. *s.* 10.) express-ly provides, that no person shall be imprisoned for life, with-out the intervention of the grand-jury.

2. That the commitment being void, the holding by the plaintiff was illegal ; and an express promise made by the defendant, while so held, to pay for his necessary support, would not be binding : *a fortiori* no such promise can be *im-plied.*

3. That the plaintiff was not entitled to recover, because he had not pursued the course prescribed by the statute, to ob-tain compensation for the support furnished to the defendant. The object of the work-house law, is, to effect the reformation of the prisoner.   He is " to be kept to hard labour ;" and two thirds of his " earnings" are to go to his " support, and making satisfaction for the charge expended, in bringing in, and furnishing materials ;" and the other third the master is

*Hartford,*
*June,*
*1821.*

Washburn
*v.*
Belknap.

to receive, and account for. In case the prisoner does not perform his task, it is made the master's duty to reduce him to obedience, by putting fetters or shackles on him, by moderate whipping, or by abridging him of his food. *Sect.* 7. 15. 21. For the master to neglect the prescribed discipline, and to permit the prisoner to live in idleness, upon the promise of the latter, express or implied, to pay for his board in money, would be to frustrate the design of the law. *Nerot* v. *Wallace* & al. 3 *Term Rep.* 17.

Hosmer, Ch. J. The sentence of the justice for the imprisonment of *Belknap,* " until he be released by order of law," was erroneous. It should have been for a definite time, or at least, until the term of the next county court, then to be discharged or not, as by the court should be adjudged proper. *Rex* v. *Hall,* 3 *Burr.* 1636. *The King* v. *Rhodes,* 4 *Term Rep.* 220. *Yates* v. *The People,* in err. 6 *Johns. Rep.* 338. 506. The statute, it is true, directs the subjects of it to be imprisoned, " until released by order of law ;" but this merely intends, until the time of imprisonment has expired ; and this period it is the duty of the justice to define, in the manner before mentioned. The object of the law, is, the reformation of the offender, and not unlimited confinement. The imprisonment of *Belknap,* notwithstanding, was legal, as he was sentenced thereto, by a magistrate, who undoubtedly acted within the sphere of his jurisdiction.

This view of the subject presents two questions for the decision of the Court : Was *Washburn,* the gaoler, obliged to supply *Belknap* with food ? and if he was, Does the request of *Belknap* to be supplied, make any difference in the result of the case ?

The statute (*sect.* 15. 16. 17.) obviously proceeds on the ground, that the prisoner, by his earnings, will more than support himself ; and provides, that " two thirds thereof shall be allowed for his support, and making satisfaction for the charge expended in bringing in and furnishing materials ; and the *overplus* of such earnings to be to the master of the house to account for." These earnings are a fund in the hands of the master of the work-house ; and if he does his duty, the law considers them sufficient to furnish the prisoner with a competent support. If, through sickness, or bodily indisposition,

the prisoner is unable to work, it is made the duty of the master to furnish him with necessary supplies, for which he is to be reimbursed, in the manner which the statute has specified. From this view of the subject, it results, that it was the duty of *Washburn* to furnish *Belknap* with food ; and that no contract to pay for the supplies rendered, is by law implied.

*Hartford,*
*June,*
*1821.*

*Washburn*
*v.*
*Belknap.*

The request of *Belknap* to be accommodated with board, which, by a previous obligation existing in *Washburn*, he was bound to supply, can make no imaginable difference in the case. It was the legal right of the prisoner to demand it, and the legal obligation of *Washburn* to furnish it ; a compensation for which, if his duty had been performed, he would have had in possession.

The request of *Belknap*, in connexion with the other facts in the case, renders it very evident, that *Washburn*, in violation of the legal obligation resting on him, to compel the prisoner to labour, and thus to help onward that reformation, which was the object of his imprisonment, voluntarily abandoned the performance of his duty, and trusted to a personal promise for compensation. To sanction conduct of this description would be of pernicious consequence. It contaminated all the acts of *Washburn*, and was a palpable violation of duty. No promise made, inducing such misconduct, can be of any legal validity.

The other Judges were of the same opinion.

Judgment to be affirmed.