DARIUS GROSS *vs.* WARREN W. RICE.*

Penobscot. Opinion June 15, 1880.

*R. S., c. 140, § 40, unconstitutional.*

Section 40 of chapter 140 of revised statutes, which provides that no convict shall be discharged from the state prison, until he has remained the full term for which he was sentenced, excluding the time he may have been in solitary confinement for any violation of the rules and regulations of the prison, is in derogation of the constitutional provision that a man shall not be deprived of his liberty without due process of law, and is for that reason unconstitutional and void.

In an action by a convict against the warden of the prison for such over-detention, actual (but not punitive) damages are recoverable, notwithstanding the statute has never before been judicially declared to be unconstitutional.

Dissenting opinions by APPLETON, C. J., and BARROWS, J. SYMONDS, J. concurring.

ON FACTS AGREED.

Trespass to the person, and false imprisonment.

In a plea of the case, for that the defendant at said Thomaston, on the tenth day of March, 1873, with force and arms, unlawfully

---

*This report was prepared by Hon. D. R. Hastings, late Reporter.

imprisoned the defendant in the state's prison in said Thomaston, and kept and held him imprisoned therein during all the time inclusive of that day and between that day and the sixteenth day of May, 1873, then next, making in all sixty-eight days, and subjected the plaintiff, during all that time, to hard labor, to the force and treatment of common convicts imprisoned in said prison, by means whereof the plaintiff was deprived of his liberty, prevented from attending to any business, or laboring for himself, or for others, for hire or compensation, as otherwise he would have done, and suffered great pain of body and distress of mind throughout all that long period of time, etc.

Writ is dated September 3, 1874.

Plea, the general issue, with the following brief statement of defence, to wit:

"That by the consideration of the justices of the Supreme Judicial Court of said State, begun and holden at Bangor, within and for the county of Penobscot, on the first Tuesday of February, A. D., 1869, Darius Gross, the plaintiff, then in the custody of the sheriff of said Penobscot county, convict of the crime of larceny on the twenty-third day of the term of the same court, being the first day of March, A. D., 1869, was sentenced to be punished by confinement to hard labor in the state prison, situated at Thomaston, in the county of Knox, for the term of four years, and to stand committed until he should be removed in execution of said sentence. And on said first day of March aforesaid, a warrant under the seal of said court was duly made out by the clerk thereof, addressed to the warden of said prison, wherein he is commanded forthwith to remove the said Darius Gross from the jail in Bangor in said Penobscot county, to said state prison, and there cause him, said Gross, to be punished by confinement to hard labor, pursuant to the sentence aforesaid, and conformably to the special provisions of law respecting the same.

"That on said first day of March aforesaid, and continuously thereafterwards, until and on the sixteenth day of May, A. D., 1873, and ever since the defendant was, and has been the warden of said prison.

"That said warrant, after it was so as aforesaid made out, was delivered to the defendant, and he as such warden, forthwith thereafter, to wit: on the ninth day of March, A. D., 1869, and before the time when, &c., in the declaration in said writ mentioned, by virtue thereof, caused the plaintiff to be removed from the jail at said Bangor to said state prison, and to be confined therein conformably to the command in said warrant, and the said sentence of the court, and made immediate return upon said warrant of the manner of executing it, and placed the same on file in his office.

"That the defendant as such warden caused the plaintiff to be punished by confinement to hard labor in said state prison by virtue of said warrant, pursuant to the sentence aforesaid, and conformably to the special provisions of the statutes respecting the same from the ninth day of March aforesaid, until the sixteenth day of May, A. D., 1873.

"That of the first four years of the plaintiff's said imprisonment, he was kept in solitary confinement, *one hundred and forty-one days*, and of the last sixty-eight days of his said imprisonment, three days as punishment for known and willful violations of the rules and regulations of said prison, duly established and then in force for the government of said prison and the discipline of its convicts, conformably to said rules and regulations and the statutes of the State, of all which the defendant made due record.

"The defendant as such warden, during all the time of the plaintiff's said imprisonment kept a record of the plaintiff's conduct and submitted the same with the scale of deductions to the Governor and Council, as required by sections 14 and 15, of chapter 140 of the Revised Statutes, and recommended, and the executive of the State granted, deductions from the plaintiff's said sentence, amounting in the whole to thirty days.

"The number of days to which the plaintiff was so as aforesaid in solitary confinement less the number of days allowed him as aforesaid for good behavior, amounted to *one hundred and fourteen days*, but by reason of a clerical error in computing the time, the plaintiff was discharged from his said imprisonment at the end of four years and *sixty-eight days*, to wit: on the sixteenth day of May, A. D., 1873.

"The imprisonment complained of in the plaintiff's said writ, was .wholly during the time the plaintiff was so as aforesaid lawfully confined in said state prison, and was a part and parcel of such lawful imprisonment, and was lawful and justified by the laws of the state, especially by section 40, of chapter 140 of the Revised Statutes, upon the facts and authority above set forth."

The commitment of the plaintiff to the state prison was under the following warrant :

{ L. S. }     "State of Maine. Penobscot, ss. To the warden of our state prison, in Thomaston, in our county of Knox, Greeting :   Whereas by the consideration of our jus- tices of our Supreme Judicial Court, begun and holden at Bangor, within and for the county of Penobscot, on the first Tuesday of February, in the year of our Lord one thousand eight hundred and sixty-nine, Darius Gross of Bangor, in the county of Penobscot, now in the custody of the sheriff of our said county of Penobscot, convict of the crime of larceny on the 23d day of the term of the same court, being the first day of March, in the year of our Lord one thousand eight hundred and sixty-nine, was sentenced to be punished by confinement to hard labor in said prison for the term of four years, and to stand committed until he should be removed in execution of said sentence.

"We therefore, command you, the said warden of our state prison, forthwith to remove the said Darius Gross from our jail in Bangor, in said county of Penobscot, to our said state prison in Thomaston, in said county of Knox, and that you there cause him to be punished by confinement to hard labor, pursuant to the sentence aforesaid, and conformably to the special provisions of law respecting the same.

"Witness, John Appleton, Justice of said court, at Bangor, this first day of March, in the year of our Lord one thousand eight hundred and sixty-nine.

E. C. BRETT, Clerk."

"Maine State Prison, Thomaston, March 9th, 1869. Pursuant to the within warrant, I have this day caused to be removed the

within named Darius Gross from the county jail in Bangor, to the Maine state prison at Thomaston.

WARREN W. RICE, Warden."

It was agreed that on the first day of March, 1869, the defendant was, and ever since has been, the warden of the Maine state prison; that the plaintiff was, on the first day of March, 1869, sentenced by said court to punishment by confinement to hard labor in the state prison for the term of four years; and to stand committed until he should be removed in execution of said sentence, and on the ninth day of March, 1869, was committed to said prison by defendant, as warden thereof, by virtue of the warrant of said court commanding him so to do; that during the first four years of plaintiff's said imprisonment, he was kept by defendant in solitary confinement, one hundred and forty-one days, and during the last sixty-eight days thereof, three more, according to a copy of the punishment record, kept by defendant at said prison, for the several offences, at the several times, and during the several periods specified therein,—said copy was put into the case, and made part of the facts agreed.

The printed rules and regulations for the government of said prison and its convicts, in force during the time of the plaintiff's said imprisonment, are made a part of the case.

The defendant submitted a record of the conduct of plaintiff, to the Governor and Council, as required by sections 14 and 15 of c. 140, R. S., recommended, and the executive granted, deductions from plaintiff's said sentence, amounting in all to thirty days.

The plaintiff was discharged from his said imprisonment on the sixteenth day of May, 1873, at the end of four years and sixty-eight days, from the day of his said commitment.

If upon these facts the action is not maintainable, the plaintiff is to become non-suit. If it is, defendant is to be defaulted, and damages assessed by a jury.

*A. Sanborn,* for the plaintiff.

*J. Hutchings,* for the defendant, cited: R. S., c. 140, § § 13, 2, 35, 40; *Wellington's Case,* 16 Pick. 96; Opinion of justices,

13 Gray, 618 ; *Shirley* v. *Wright*, 2 Salk. 700 ; *Parsons* v. *Lord*, 3 Wils. 341, (1772) ; *Beach* v. *Furman*, 9 Johns. 229 ; *Washburn* v. *Belknap*, 3 Conn. 502 ; *Sessums* v. *Botts*, 34 Tex. 335 ; *People* v. *Salomon*, 54 Ill. 46 ; *Commonwealth* v. *McComb*, 56 Penn. stat. 436 ; *Steines* v. *Franklin Co.* 48 Mo. 167 ; *State* v. *Saline Co.* Id. 390 ; *Columbia Co.* v. *King*, 13 Fla. 451 ; *Same* v. *Davidson*, Id. 482 ; Laws 1824, c. 282, § 16.

PETERS, J. The sentence was for four years. For good conduct, the prisoner had credits which gave some deduction from the sentence. For bad conduct, he was in solitary confinement one hundred and forty-four days. The punishment in solitary confinement was at various times and for various causes. Among the causes were disturbance, laziness, insolence, noise, breaking rules of workshop, assault upon a fellow convict, disobedience, refusal to work, threats, spoiling work, and laughing and talking. He was not discharged, until he had served his sentence and sixty-eight days imprisonment additional thereto. This detention was in pursuance of section 40, c. 140, R. S., which provides that a convict shall not be discharged from the state prison until he has remained the full term for which he was sentenced, excluding the time he may have been in solitary confinement for violation of the rules and regulations of the prison. Is this section of the statute valid and constitutional? We think not.

By the declaration of rights in our State constitution, the accused, in criminal prosecutions other than cases of martial law and impeachment, has the right of a public trial by jury, and cannot be deprived of his life, liberty, property or privileges, but by the judgment of his peers or the law of the land. By the fourteenth amendment to the national constitution, no state shall deprive any person of life, liberty or property, without due process of law. It is not now worth while to discuss the effect of any verbal differences between the state and national prohibitions, as we feel clear that the clause in the national amendment is directly applicable to the question presented.

No one would for a moment deny the proposition, that a person cannot be taken to the state prison and detained there, as a punishment, without an accusation, trial by jury, conviction and

sentence. Nothing less than these forms would amount to due process of law, where an infamous punishment is to be inflicted. No one would deny that such an act, done by the State, would be in direct defiance of the constitutional amendment. But a man, lawfully imprisoned, is detained in prison beyond the term of his sentence, without any new accusation, trial and sentence as a justification therefor. Is not this detention a new imprisonment? Is there a difference whether the person is seized within or without the walls of the prison, to be incarcerated? Does not the constitutional inhibition in its terms apply as clearly and literally to this act as to the other? Suppose the statute was not in existence, and never had been passed. Would it be pretended that the warden would be justified in detaining a convict for a single day over his sentence? If he did, would not the act deprive the prisoner of his liberty without any process of law and without any legal excuse or justification whatever? The State orders it to be done. Does not the State then deprive the prisoner of his liberty without due process of law? Here, punishments are inflicted upon the prisoner during the term of his sentence; for solitary confinement is deemed a much severer infliction than hard labor. After his sentence has expired, he is imprisoned anew for sixty-eight days without a formal accusation, or trial or sentence by any court. It is clear that the imprisonment for more than the four years was not warranted by the sentence itself, nor could it be. A man cannot be sentenced for a crime or offence before he has committed any; not for an offence to be committed; not conditionally. The plaintiff was punished, after his term of sentence, for having been punished during the term. The detention was not as a punishment bestowed by the warden in the exercise of his discretion, but was one imposed by the legislature as a consequence of the warden's doings. In effect, the plaintiff was punished both during his term of sentence and after it, for the same offence. He was doubly punished for a violation of the rules and regulations of the prison. The very statement of the proposition would seem to be its proof. *Res ipsa loquitur.*

It is said that the warden must have the power to inflict punishments upon prisoners for the prison discipline. There can be no doubt of that. It is not to be denied, that the punishment of refractory convicts is a matter within the discretion of the warden, within reasonable limits. Nor is it denied, that the warden had the right to hold the convict in solitary confinement for the time and upon the charges that he did so hold him, during the term of sentence. We are of the opinion, that the warden had no authority to detain or punish him after his sentence had expired. It would be according to due process of law to do the one thing, and in defiance of it to do the other. It does not follow that because a warden may inflict some punishment, he may inflict any. Due process of law requires that a person shall not be subjected to an infamous punishment, which would be a confinement in the state prison, without a trial by jury and sentence by court. Here an infamous punishment was put upon the plaintiff without the order of court.

It is said that this convict has no cause to complain, because he was the instrument of his own misfortune, and could have avoided the additional imprisonment complained of by better behavior. Would that not be as true in the case of all criminals? However guilty and however much deserving punishment in the state prison, can any criminal be sent or be detained there without the ordinary proceedings in court? Is an unlawful imprisonment made lawful because the prisoner deserves imprisonment? It is true, that the prisoner has no cause to complain of the solitary confinement, nor does he. That he could have avoided, and has no remedy if he did not. He complains that, as a consequence of that punishment, he had imposed upon him another and additional punishment of an infamous character without a trial at law.

The common law requires that the punishment of persons convicted of crime shall be definite and certain. *Præmunire* was an exception, as for that offence a convict could be imprisoned during the pleasure of the king. The sentence must inform the convict as to the kind and duration of his imprisonment. This is too clear to need authority or argument. A few cases of interest

may be cited : *Washburn* v. *Belknap*, 3 Conn. 502 ; *Republic* v. *DeLongchamps*, 1 Dallas, 120 ; *Yates* v. *The People*, 6 Johns. 337 ; *Rex* v. *Hall*, 3 Burrows, 1637. But if this statute (sec. 40) is constitutional, then there can be no definite sentences awarded. The will of the warden would in effect control the maximum duration. It is plainly to be seen that, in this way, the warden could extend a punishment indefinitely. If he can prolong a sentence a day, he can a week, or a month, or even for years. And that too for transgressions not of an aggravated character. It should be noticed, that the operation of this statutory provision was to detain the convict in prison sixty-eight days for a long list of transgressions and delinquencies, which (the assaults excepted) could not by possibility be indictable offences. For instance, he is imprisoned for five days after his sentence expired for chewing wax and laughing upon an occasion before its expiration. He was in solitary confinement for three days, for a transgression committed after the expiration of his sentence.

What a wild field this idea of such unlimited power over a convict opens into ! How uncertain and varying would be the results ! How much would be made to depend upon the good or bad judgment of a warden ! How much upon the whim or caprice, the passions and temper, not only of the warden, but of his agents and servants and employees ! It is not an answer, that an appeal lies from the warden to the overseers. The convict is in no position to make an appeal. "Bondage is hoarse, and may not speak aloud," says the great poet. But it is as objectionable (constitutionally) for such power to be reposed in the hands of the board of overseers as in the warden's hands. A convict cannot be properly imprisoned by either after his sentence has expired. As said before, as far as certain kinds and amounts of punishments are concerned, the convict must submit to the exercise of a sort of judicial power in the warden and overseers, whether severely or clemently exercised. But when a punishment of an infamous character is to be imposed upon a prison-convict or any one else, the constitutional provision requires that such a deprivation of one's liberty shall only be authorized by proper proceedings in a

judicial court. Nothing else in such case can be regarded as due process of law.

It is contended that a warden may have the same control over a convict that a parent has over a minor child, or the teacher over the scholar, or the master over his apprentice ; a private class of cases where restraints upon personal freedom are permitted by the law, as an exception to the general rule. (Cool. Const. Lim. * 342). Or perhaps it would be more correct to say, that it is due process of law for a parent to chastise his child, he being within a reasonable and limited extent the judge of the propriety or necessity of the punishment. But how does the comparison hold good between the authority exercisable in any of this class of cases, and the authority exercised in the case at bar? The warden detained the prisoner after the relation of warden and prisoner had legally ceased to exist. Can a father punish his son after the son has become of the age of twenty-one? Can a master for any purpose whatever control an apprentice after the term of apprenticeship has terminated? Can a teacher punish a scholar in any form after the term of school has finally closed? Can a father inflict an infamous punishment upon his minor son? On the contrary, for any abuse of his legal right of control, he will himself be liable even to criminal prosecution.

It does not militate against our proposition in this case, to admit that there are other instances where persons may suffer imprisonment where there has been no trial by jury. A man may be arrested upon mesne or criminal process and lodged in jail. That is for custody and not for punishment. So a person may be imprisoned for contempt of court without a trial by jury. But this is all by due process of law. The law of the land has ever permitted it. And there are other instances. But it does not follow at all from these or any other instances or illustrations, that the constitutional provision should not apply to the case at bar.

It is argued that the sentence was four years imprisonment at hard labor, and that the sentence had not expired at the end of the four years, because the labor had not been performed, the convict doing no work when in solitary confinement. But the

imprisonment is the primary purpose of the sentence. It is such hard labor as during the sentence can be obtained. But this literal construction does not aid the defendant's argument, for while there are to be four years of hard labor, there are to be but four years of imprisonment.

It is urged upon our attention that this statute is of ancient origin, existing in 1824. But the judicial opinion and the public sense were not so much awakened to the importance of the principle underlying this matter then as now. The fourteenth amendment, which is perhaps more definite and pronounced than the personal liberty clauses in the bill of rights in our State constitution, has been added since. Decisions, sustaining the constitutionality of certain statutes allowing summary proceedings, have been overruled since. See *Portland* v. *Bangor*, 65 Maine, 120, a case in its whole course of reasoning particularly applicable.

*Dolan's Case*, 101 Mass. 219, is relied on by the defendant. That case denies that a sentence is to be abridged by the absence of a prisoner who escaped and was retaken during his term of sentence. During his absence he was suffering no imprisonment. Here, while the convict was not at hard labor, he was suffering a severer punishment. That case differs much from this. *State* v. *Gurney*, 37 Maine, 156, and *Lord* v. *State, Idem.* 177, are much more like the case at bar. In those cases it was decided that the legislature could not provide that a greater penalty should be applied in an appellate court, in case of an appeal, than in the court below. See *Jones* v. *Robbins*, 8 Gray, 329.

In *Commonwealth* v. *Halloway*, 42 Pa. St. 446, it was held that a law like our own was unconstitutional "as interfering with the judgments of the judiciary." There, as here, the sentence was pronounced after the law was passed. The question presented was whether the act was binding to lessen a sentence for good conduct. The court says that "the discretion as to the length of a sentence is vested only in the judiciary," and adds : "Any interference with that sentence, except by a court of a superior jurisdiction, or by the executive power of pardon, would seem to be a prostration of that distribution of governmental functions which the constitution makes among three co-ordinate depart-

ments. In this view the act would be highly unconstitutional." We need not say as much in the discussion of the question presented to us. What we do say is, that under a sentence of four years a prisoner cannot be held longer than four years ; that all punishments must be inflicted upon a convict during his term, and neither directly nor indirectly afterwards. Although the process authorized by the statute and prison rules for prison discipline, may be ever so just and humane, yet so far as punishment was imposed after (not during) sentence, it was not *the* process, not the due process of law demanded by the constitution.

A point is raised for the defence, that the warden should be protected, because the statute had not been declared unconstitutional when he acted under it. We do not comprehend the logic of a statute having effect as if constitutional, when not so ; to be a law for one purpose and not another ; a law for one man and not another. It must be either valid or invalid from the beginning, or from the date of the constitutional provision affecting it. Judge COOLEY says, (Const. Lim. *188), "when a statute is adjudged to be unconstitutional, it is as if it had never existed." Such is much the better opinion upon the authorities, and such has been the view of the question in the practice in this State. An unconstitutional law is not a law. It is null and void. The warden is only liable to the perils that more or less follow official stations. He had no warrant of court that could protect him. He is liable for the actual, not punitive, damages for the injury suffered.

WALTON, VIRGIN and LIBBEY, JJ., concurred.

DANFORTH, J., being a relative of the defendant, did not sit.

### DISSENTING OPINIONS.

APPLETON, C. J. The plaintiff "was sentenced to be punished by confinement to hard labor," in the state prison for the term of four years, and the warden was ordered that he "there cause him to be punished by confinement to hard labor, pursuant to the sentence aforesaid, and *conformably to the special provisions of law respecting the same.*" For known and willful violations of

the rules and regulations of the prison he was kept in solitary confinement one hundred and forty-one days. He was allowed for good behavior, twenty-seven days, but owing to an error in the computation, he was detained in prison but four years and sixty-eight days—the time he was in solitary confinement for a violation of the rules and regulations being excluded from the full term of his sentence in pursuance of R. S., c. 140, § 40.

This suit is brought against the warden for his detention of the plaintiff, as required by § 40.

By R. S., c. 140, § 11, the inspectors of the state prison shall "establish such rules and regulations, consistent with the laws of the State, as they deem necessary and expedient for the direction of the officers, agents and servants of the prison in the discharge of their duties . . . shall establish rules for the government instruction, and discipline of the convicts and for their clothing and subsistence." These rules and regulations are to be laid before the Governor and Council, "who may approve, amend, or modify them, and make and establish such other rules and regulations consistent with the laws of the State, as they see fit; and the Governor shall communicate all rules and regulations, thus approved, to the next legislature," &c.

In pursuance of the authority thus given, rules and regulations have been established and approved. They are "consistent with the laws of the State. They must be stringent, else there could be no order nor discipline, but they are wise and humane. The prisoner who conforms has no cause of complaint. The prisoner who violates or disobeys them, will and should suffer the penalty of disobedience. These rules and regulations have the force and effect of law.

These rules and regulations to be of any avail must be enforced. How and by whom? By criminal proceedings before a magistrate? Must the warden or other officer on any infraction of the rules and regulations of the prison, enter a complaint before a magistrate, and process issue, and the convict under charge of an officer, or officers be brought before the magistrate and a trial had to determine whether the accused has been guilty of disobedience and misconduct? If found guilty, is he to have the right of

appeal and a trial by jury? The proposition is absurd. The convict is there for purposes of discipline within the authority and limitations conferred by the State.

Within the powers conferred by the statute, and the rules and regulations in conformity therewith, the authority of the warden is discretionary and despotic. Exceeding his authority he is liable to punishment. Within it he is to be protected. By § 13, "he may punish any convict for disobedience, disorderly behaviour, or indolence, as directed by the inspectors or prescribed in the rules and regulations, and shall keep a register of all such punishments, and the cause for which they are inflicted."

The warden has charge of the prisoners. "He shall inspect and oversee the conduct of the prisoners, and cause all the rules and regulations of the prison to be strictly and promptly enforced." Within a limited extent his power is and must be absolute. He is to determine if a rule or regulation has been violated. He must determine as a preliminary to their strict and prompt enforcement. There is no appeal from his determination; for he is to inflict the punishment consequent on his determination if a rule or regulation has been violated.

The check upon the warden is found in the record, he is required by § 14, to keep of the conduct of each convict, and which is to be reported by § 15, to the Governor and Council once in three months.

The inspectors by § 10, may "order such corporal punishment as they may deem necessary to enforce obedience, not inconsistent with humanity, and authorized by the rules and regulations established for the government of the prison." In the rules and regulations furnished us, we find no order for corporal punishment. The warden is therefore left to the authority given by § 2, that "solitary imprisonment may be used as a prison discipline for the government of the convict." By § 35, the diet of the convict is prescribed when solitary imprisonment "is inflicted for the violation of the rules and regulations of the prison."

The punishment inflicted was for a violation of the rules and regulations of the prison. It was inflicted by an officer, clothed with authority so to punish. It was in accordance with the statutes

of the State. It was a lawful punishment, and one appropriate to the offence.

By § 40, no convict is to "be discharged from the state prison until he has remained the *full* term for which he was sentenced . . . excluding the time he was in solitary confinement, for any violation of the rules and regulations of the prison, unless he is pardoned or otherwise released by legal authority." The section assumes that rules and regulations may be made, that solitary confinement may be a punishment for their violation, and that time so spent shall not be deemed part of the *full* term of the convict.

The convict was sentenced for larceny. His sentence was subject "to the special provisions of law respecting the same." It was incident to and part of the sentence that he should be subject to the rules and regulations of the prison, and liable to the penalties for their violation. It is his own act that he violates them. If the rules and regulations, and the statute authorizing them are constitutional, then is the punishment inflicted for their violation legal. If so, then the legislature may well say that time spent for that punishment shall not count on the time for another and different punishment. Solitary confinement for violation of the rules and regulations of the prison, was the punishment for such violation. It was not for or on account of the larceny for which he was sentenced.

The punishment for violation of prison discipline must be within the walls of the prison. It cannot be elsewhere. The convict is not at hard labor. He is suffering punishment for an omission or commission of some act, which was a part of the sentence imposed, that he should do, *i. e.* obey the prison rules.

It is urged that the sentence must be fixed and definite. True. It is fixed and definite. In the present case it was four years. The time is certain. The time to be deducted for solitary imprisonment as a punishment is certain. In *Clerk* v. *Commonwealth*, 21 Grattan, 777, the plaintiff escaped from jail before the expiration of his sentence. After its expiration he was indicted for the escape. It was held that he was to be held in prison for the time he was out when he escaped. It was argued that it

would be dangerous to give a man ministerial power to prolong the imprisonment for the purpose of obtaining compensation for so much of it as may have been avoided by an escape. "But," says the court, "there would be no difficulty in ascertaining the measure of such compensation. The jailer would know the precise period of the escape, and the recapture; and would act at his peril. If he erred, the party aggrieved would have a prompt and efficient remedy by *habeas corpus*, in which the facts on which the legality of the act of the jailer would depend, could be easily and clearly ascertained." If during his term of punishment a prisoner escapes, he may be retaken after the term, and held to answer for the residue of the time for which he was imprisoned. *Haggerty* v. *The People*, 6 Lansing, (N. Y.) 332. So if a prisoner under sentence, be imprisoned for a term expressed only by the length of escapes during the term, the period during which he remains at large does not abridge the term of imprisonment, which remains for him to suffer before fully performing the sentence. *Dolan's Case*, 101 Mass. 219. It is obvious that so far as regards definiteness and certainty of sentence, it is equally certain whether the absence from hard labor, which was the sentence, arises from a disobedience of prison rules, and the consequent punishment, or from an escape. In either event the time so lost can be deducted without impairing the definiteness of the sentence.

There must be punishment for the violation of prison rules. Nobody supposes that uttering moral platitudes to convicts, will be very efficacious in its effect on their conduct. Liberty is given under certain conditions to punish informally. Authority to inflict solitary confinement is conferred. It is a part of the necessary discipline of the prison. One so imprisoned is not at hard labor. He is not punished for the offence for which he was committed. His confinement is for another offence. The time when not serving in execution of his sentence is time lost, equally, whether the absence from labor arose from an escape or from the punishment consequent on disobedience. In either event it is the consequence of his own acts, and the time spent as a punishment

should not be allowed to do double service as a punishment at one and the same time for two distinct offences. As was said by MONCURE, P., in *Clark* v. *Commonwealth*, "the two offences are distinct, and each is subject to its appropriate punishment."

The plaintiff was sentenced for larceny. His sentence was to be executed, subject to the laws of the State and the rules and regulations of the prison. While undergoing his sentence he violated one of the rules and regulations prescribed. The legislature say, that the time of the prisoner when suffering imprisonment as and for a violation of prison discipline—as disciplinary punishment—shall not be allowed as part of the term of his original commitment. But if the warden had the right to impose the punishment then there can be no valid reason against the legislative prohibition of its allowance as part of the term of commitment.

It was held in *Commonwealth* v. *Johnson*, 42 Penn. 446, that an act allowing deduction from the term of imprisonment on account of good conduct was unconstitutional, as interfering with the judgment of the judiciary. But the case is not applicable. The section under consideration does not enlarge the time of the prisoner's sentence. It merely gives effect to the rules and regulations established for the promotion of prison discipline. "The danger," observes WOODWARD, J., in the case cited, "is not in the direction of a too vigorous punishment of perverse criminals, but rather to letting of the guilty go unwhipped of justice."

It may be urged that officers may err, be oppressive, tyrannical and abusive. That may all be. But if the argument is good, it tends to the destruction of all government, for there is no government and no officers under any government, of whom possible error and oppression may not be predicated. But is there then to be no government, and if a government are there to be no officers, because they may abuse their trusts? Governments cannot be administered without committing powers in trust and confidence.

The abuse of a trust is no argument against the existence of trusts, but it is a good reason for the punishment of one who abuses a trust. So here the warden is punishable for a violation of law.

It is begging the question to say the prisoner is held beyond his term. The time spent as a punishment for violation of prison rules is not to be counted as part of the term, during which, he was to be at hard labor. That excluded from the computation, he is only held for the term of commitment.

It all comes back to this : Has the State a right to prescribe rules and regulations for the government of its state prison, to entrust the warden with power to determine their violation, and to impose, within the statute, the punishment for such violation ? If so, there would seem to be no infringement of the constitution in the enactment that time spent in confinement for disobedience of lawful rules, by way of prison discipline, should not be allowed as part of the term which the prisoner is required to serve.

By c. 282, § 16, of the acts of 1824, it was provided that time spent in solitary confinement for any misconduct or violation of the regulations of the prison, shall not be deemed a part of the time for which he was sentenced. This provision has been preserved in all the revisions of our statutes. Its constitutionality has never been denied or questioned. It has been in force and acted upon for more than half a century. When an act has been passed with all the forms of law, the presumptions are in favor of its constitutionality, and no court will declare it void, unless its invalidity is beyond all reasonable doubt. Such is not the case with the statute under discussion.

There have been two revisions of the statutes in which Chief Justice MELLEN, and Chief Justice SHEPLEY took part, and the statute, under consideration, received their sanction by its re-enactment in the several revisions over which they presided.

To pronounce a law of a State unconstitutional, demands the greatest consideration; and such a law should never be so denominated, if it can upon any other principle be correctly explained. *Fletcher* v. *Peck*, 6 Cranch, 87 ; *Butler* v. *Pennsylvania*, 10 How. (U. S.) 402.

SYMONDS, J., concurred.

BARROWS, J. I concur in the opinion of the Chief Justice.

The idea that a general law of the State, allowing a convict in the state prison credits for good behavior in reduction of the term of his imprisonment, and excluding in the computation of his term the time that he is in solitary confinement for offences against the rules and regulations of the prison, is unconstitutional, "as interfering with the judgments of the judiciary," while it is the strongest ground that can be taken against the validity of the law, and hence is made the basis of the decision of the learned court in Pennsylvania, in *Com.* v. *Halloway*, 42 Penn. St. 446, does not seem to me to be well founded.

The court imposes, and the convict receives his sentence, subject to such modifications as are created by existing laws.

The court acts in view of these very provisions, contemplating their probable effect upon the practical execution of the sentence. The convict receives the sentence which deprives him of his liberty, and "subjects him to an infamous punishment," (a sentence imposed not merely for the protection of the community against his lawlessness, but for his own possible reformation, and probable restraint from other crimes,) *with all its incidents,* one of which is his necessary temporary subjection to the judgment of the warden, in case of his offending against prison discipline. If he suffers for such offences, he suffers "by due process of law," which from the necessity of the case commits to the warden, jurisdiction over him and them in elaborate and carefully guarded provisions, which give the convict as ample protection against tyranny and injustice on the part of the warden, as the circumstances permit. See R. S., c. 140, *passim*, and particularly § § 9, 11, 13, 15.

Yet, as he is suffering for new offences, other than that for which his sentence was imposed, the law excludes "the time he is in solitary confinement for any violation of the rules and regulations of the prison."

Could the legislature give the warden this jurisdiction, authorize him to punish these offences against prison discipline, and declare that the time so consumed should not be reckoned in computing the term of the sentence? It is a power which they assumed early in the history of the State, executed elaborately, and for more than fifty years it was not questioned.

The legislature seem to have supposed that for the proper government of those committed to his charge, the warden must have jurisdiction over such offences against good order, and a discretionary power, regulated as we have seen by statute, and exercised more or less with the advice and supervision of the inspectors, to maintain order and punish by reasonable penalties any infractions of the prison rules; and they gave him such power and jurisdiction accordingly.

Force, even to the extent of wounding and killing, may be used to suppress resistance to authority, and compel obedience to the lawful commands of the officers, and the officers are justified in employing it, § § 36, 37. Are these provisions unconstitutional also? Life has as many constitutional safeguards as liberty. No man should be deprived of either, except in strict accordance with the law of the land.

The legislature seem to have thought that the government of convicts in the state prison might require other methods than those applicable to the community at large. Corporal punishment "not inconsistent with humanity," may be inflicted upon those confined there, under the direction of the inspectors. § 10. The legislature recognized the obvious fact that duties devolve upon the warden of the state prison, which differ somewhat from those of the superintendent of a Sunday school, and they invested him with the powers requisite to enable him to discharge those duties, such powers as men in ordinary life and society do not and should not have.

There are, however, other positions in life where the safety and advantage of all concerned require, and the law accordingly gives, a power to restrain personal liberty, and even to inflict reasonable and salutary punishment, without the formalities of a legal trial, pleading, evidence, conviction, and sentence. Sailors on shipboard, lunatics in asylums, children in families and schools are liable to be dealt with in ways which might be caviled at as deprivations of their liberty and violations of their personal privileges, without the judgment of their peers and due process of law.

But who would think of objecting on constitutional grounds to the just and reasonable exercise of the power vested in shipmasters and others in like responsible positions *ex necessitate*, or of proclaiming that the constitutional rights of citizens are thereby infringed? The rightfulness of their jurisdiction and discretionary power to hear, decide, command, and compel obedience, in fine to execute (even at the expense of confinement, hard fare and stripes to recusants), all that is reasonably necessary and desirable for the general safety and well being of the persons and things under their charge, is as yet unquestioned. I see no reason to hold that convicted criminals have rights any more sacred than those whom the law subjects to the authority of men having the control of them for special purposes other than the punishment of crime.

Unfortunately the noisy and dogmatic philosophy of to-day has spawned many "go as you please" notions, the direct tendency of which is to sap the power of any, even the most liberal, government in the world to protect the peaceable and orderly, and to restrain the vicious from developing, according to their own perverse wills and base instincts, into enemies of society; until the real danger is that an exaggerated tenderness for the rights of criminals may make them the dominant class, before whose unscrupulous audacity the rights of others shall give way. None so ready as they to invoke strict constructions of the constitution to shield them from the just penalties of violated laws.

In various particulars, it seems to me clear, that as a *necessary incident* to the punishment of his crime, the convict incurs a liability to summary punishment for other minor offences, by those having him in charge, a liability to which the citizen is not and ought not ordinarily to be subjected. To this extent, from necessity, and, in one sense, as a part of his punishment, the imprisoned convict has temporarily forfeited the ordinary rights of citizenship, and subjected himself to those laws that are specially enacted for the government and regulation of the state prison. And when he suffers under them, he suffers "by due process of law."

The reasoning in the majority opinion seems to proceed mainly upon the idea that punishments under the direction of the warden

for the breach of prison regulations, are not "by due process of law."

Why not, as much as a punishment for a contempt of court? From the nature of the case, and the necessities of the position, the warden, like a judge in a case of contempt, must have the jurisdiction which those statutes give him.    Without the power to maintain good order by appropriate penalties for the breach thereof, it would be impossible for the officers to conduct the work of the prison, or even to keep the convicts in security.

From the necessity of the case, too, the penalties for disorderly conduct, must be inflicted within the prison walls.    But the warden does not confine the convict in the state prison for the misdemeanors which he there commits, as the majority opinion seems (erroneously, I think,) to assume ; for he is already there, under the sentence of the court.    If the legal punishment of his bad conduct practically results in lengthening his detention, it is none the less by force of law, and in due process of law, the law which determined before the sentence was imposed, how its term should be computed.

I do not see that any constitutional rights of convicts require us to deprive them during the term of their imprisonment of all hope of bettering their condition by good behavior, or of all restraint from bad behavior in prison by fear of the consequences. The law seems to me to be a beneficial one, and to put prisoners more upon the footing of those who are not past all hope of redemption ; and in most cases it operates to abridge the term of imprisonment.    It is the prisoner's own fault if it does not.

At least, the doubt whether the legislature have exceeded their .constitutional power in this instance, ought to restrain us from pronouncing the law invalid.